IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL DAVID ODOM, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER OF DETENTION <br><br> Case No. 2:22-CR-491-TS <br><br> District Judge Ted Stewart |

This matter is before the Court on Defendant's Appeal of the Magistrate Judge's Order of Detention. The Court conducted a hearing on May 1, 2023, to hear argument from the parties. Following the hearing, the Court took the matter under advisement. For the reasons described herein, the Court affirms the Magistrate Judge's Order of Detention.

I.  BACKGROUND

Defendant is charged as one of 11 defendants in an eight-count Indictment for (Count 1) Conspiracy to Distribute Methamphetamine in violation 21 U.S.C. §§ 841(a)(1) and 846; and (Count 3) Possession of Methamphetamine with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1).[1] Magistrate Judge Dustin Pead conducted a detention hearing on December 15, 2022, and ordered Defendant detained.[2]

On January 6, 2023, Defendant filed a Motion to Modify Conditions of Release,[3] requesting he be released to the Odyssey House of Utah, where he had been accepted to

---

[1] Docket No. 40.
[2] Docket No. 74.
[3] Docket No. 118.

participate in their residential drug treatment program. Magistrate Judge Pead held a hearing on the Motion on January 25, 2023, and ordered that Defendant remain detained pending resolution of the criminal charges.[4] On April 3, 2023, Defendant filed a Second Motion to Modify Conditions of Release, again requesting he be released, but this time to the Red Barn Academy, where he has been accepted to participate their residential program.[5] Magistrate Judge Pead held a hearing on the Motion on April 10, 2023, and again ordered that Defendant remain detained. On April 19, 2023, Defendant filed a Motion for Review of Detention by District Judge.[6]

## II.   STANDARD OF REVIEW

The Court considers Defendant's request for a review of the Magistrate Judge's order of detention under 18 U.S.C. § 3145(b) and DUCrimR 57-16(a)(1). The Court conducts a de novo review of the detention issue, giving no deference to the Magistrate Judge's findings or conclusions.[7] In so doing, the Court may elect to start from scratch and take evidence—whether or not new evidence is proffered—and also may incorporate the record of the proceedings conducted by the Magistrate Judge, including any exhibits.[8]

In making its determination, this Court, like the Magistrate Judge, is governed by the standards set forth in 18 U.S.C. § 3142. Under that statute, an accused is ordinarily entitled to pretrial release, with or without conditions, unless the Court "finds that no condition or

---

[4] Docket No. 137.

[5] Docket No. 164.

[6] Docket No. 176.

[7] DUCrimR 57-16(a)(1) (providing for de novo review of detention orders); *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002); *see also United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (holding that district court's review under § 3145(a) is de novo).

[8] *Lutz*, 207 F. Supp. 2d at 1251.

combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."[9]

In certain cases, however, the presumption shifts. Section 3142(e)(3)(A) dictates that, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."

In this case, Defendant is charged with two violations of the Controlled Substances Act, each punishable under 21 U.S.C. § 841(b)(1), which carries a maximum term of life imprisonment. The Indictment constitutes probable cause that Defendant participated in the acts alleged.[10] Therefore, detention is presumed.

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.[11]

As stated, the burden of persuasion remains with the government. The government must prove risk of flight by a preponderance of the evidence and must prove dangerousness to any other person or to the community by clear and convincing evidence.[12] To determine whether

---

[9] 18 U.S.C. §§ 3142(b), (c), and (e).

[10] *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).

[11] *Id.* at 1354–55.

[12] *Cisneros*, 328 F.3d at 616.

there are conditions of release that will reasonably assure the appearance of Defendant and the safety of any other person and the community, this Court considers the following factors:

> (1) The nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .[13]

### III. DISCUSSION

The basis for Defendant's Motion for Review is his acceptance to the Red Barn Academy. Red Barn Academy is a 27-month residential treatment program that Defendant asserts will teach him "the social, vocational, and life skills necessary to break the cycle of criminality, addiction, and incarceration."[14] Defendant argued that his participation in the Red Barn Academy, in conjunction with wearing an ankle monitor, will assure his participation at all requisite court proceedings and will negate any danger he poses to the community. At the May 1 hearing, a representative from Red Barn Academy appeared and testified regarding the program. The representative stated that the program does not engage in drug treatment and is not a lock-down facility. Instead, the program teaches or reteaches their participants "honesty, integrity, and accountability," and replaces negative behaviors with positive behaviors. The representative further testified that the participants are kept on a very strict schedule, that the participants are

---

[13] 18 U.S.C. § 3142(g).

[14] Docket No. 176, at 2.

4

not permitted use of drugs and are regularly drug tested, and that if Defendant ever tested positive or was otherwise suspected of illegal drug use, he would be reported to his probation officer.

Based on these representations, Defendant has met his burden of production to rebut the presumption of detention. Thus, the burden remains with the government to prove risk of flight or dangerousness. However, the presumption remains a factor. Considering the evidence presented to the Court, along with the presumption, the Court will now analyze each of the § 3142(g) factors.

First, the Court considers the nature and circumstances of the offense charged, including whether the offense involves a controlled substance. Here, Defendant is charged with conduct related to his alleged participation in a drug trafficking organization ("DTO") that brought approximately 60 to 65 pounds of methamphetamines to Utah each month. The government alleged Defendant played a significant role in the DTO. At the May 1 hearing, the government proffered that over 20 calls between Defendant and Mr. Noble, the DTO leader, were intercepted between September 30, 2022, and November 26, 2022. During these calls, Defendant is alleged to have ordered a total of at least 12 pounds of methamphetamine. The government further proffered that Defendant was observed at Mr. Noble's home picking up drugs and, after an alleged drug exchange, agents detained Defendant and found half a pound of methamphetamine in his vehicle. The government also alleged that Defendant is facing a lengthy prison sentence, specifically a ten-year mandatory minimum and, assuming a criminal history category of III, a guideline range of 168 to 210 months, with acceptance of responsibility. Defendant disputed that he would be subjected to a ten-year sentence. However, based on the serious nature of the

underlying crime and the possible length of prison sentence Defendant faces, the Court finds that this factor weighs in favor of detention.

Second, the Court considers the weight of the evidence. The Indictment provides probable cause that Defendant committed the charged offense. Further, as described above, the government proffered that Defendant was heard on a wiretap about 20 times ordering a total of 12 pounds of methamphetamine from Mr. Noble over approximately two months. He also is alleged to have been found with half of a pound of methamphetamine in his possession. Finally, the government alleged that, post-*Miranda*, Defendant admitted to distributing quarter-pound to pound amounts of methamphetamine during the time in question. Based on the proffered evidence presented to the Court, the Court finds that this factor also weighs in favor of detention.

Third, the Court considers the history and characteristics of the person. Defendant does not appear to have strong ties to Utah. He was born in California. In 2017 he reported that he had no family or friends in Utah in a letter to the Court related to a different criminal case.[15] Defendant has a history of substance abuse. At the May 1 hearing, the government proffered that Defendant's drug of choice is bath salts, which cannot be detected in a urinalysis. Defendant alleged he participated in a voluntary RDAP program, while serving an 18-month federal sentence. However, he explained this was more of a 12-step program and that he has never had the opportunity to participate in an inpatient program. Defendant has a lengthy criminal history. His past crimes include numerous theft, fraud, and drug related charges, among others. He also has one felony possession with intent to distribute charge from 2020, which is pending in the Third District Court of Utah, for allegedly being found in possession of a distributable amount of heroin, baggies, and a scale.

---

[15] Case No. 2:14-cr-532-TS, Docket No. 77.

Defendant asserted that he has shown an ability to be compliant with Court orders and on supervision. The government did not disagree with Defendant on this point and noted at the May 1 hearing that Defendant has been granted early termination of supervised release on two occasions due to his good behavior. However, the government further noted that in each case where early termination was granted, Defendant began reoffending only shortly after termination of his supervision.

At both hearings before Magistrate Judge Pead, Defendant stated he had a sincere desire for sobriety and to turn his life around. He expressed frustration regarding the "cycle" he has continued to go through that leads him back to crime, and a hope that he could find a way to break that cycle. Defendant stated a particular interest in the Red Barn program and what it can offer. Despite Defendant's seemingly sincere desire to overcome his addiction and turn his life around, the Court finds this factor weighs in favor of detention because of Defendant's criminal history, drug addiction, and quick return to crime following supervision on previous occasions.

Finally, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by the person's release. For reasons set forth above regarding Defendant's drug distribution allegations, drug addiction, and criminal history, the Court finds that this factor also weighs in favor of detention.

Based on the Court's consideration of each of the above factors, the Court finds that the government has met its burden in proving that Defendant poses a danger to the community by clear and convincing evidence. The Court will therefore affirm the Magistrate Judge's Order of Detention.

## IV. CONCLUSION

It is therefore

ORDERED that the Magistrate Judge's Order of Detention (Docket No. 167) is AFFIRMED.

DATED this 2nd day of May, 2023.

BY THE COURT:

Ted Stewart
United States District Judge